# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 13-41812-MSH |
| JAQUELINE GOULET | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |
|  | ) |  |
| JAQUELINE GOULET | ) |  |
|  | ) |  |
| Plaintiff | ) | Adversary Proceeding |
|  | ) | No. 13-4071 |
| v. | ) |  |
|  | ) |  |
| GMAC MORTGAGE, LLC AND | ) |  |
| FEDERAL NATIONAL MORTGAGE | ) |  |
| ASSOCIATION | ) |  |
|  | ) |  |
| Defendants | ) |  |

## MEMORANDUM OF DECISION ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff and debtor in the main bankruptcy case, Jaqueline Goulet,[1] initiated this

adversary proceeding against the defendants, GMAC Mortgage, LLC and the Federal National

Mortgage Association ("Fannie Mae"), claiming that the 2011 foreclosure of the mortgage on

her home at 12A West Maple Street (also referred to as 12 West Maple Street, Unit A), in

Milford, Massachusetts was invalid for a variety of reasons, most prominently because: (i) the

foreclosure sale was conducted without GMAC's having obtained a judgment under the

---

[1] In some documents Ms. Goulet's first name appears as "Jaqueline" while in others it appears as "Jacqueline." Ms. Goulet bankruptcy petition bears the name "Jaqueline Goulet."

Servicemembers Civil Relief Act, 50 U.S.C. App. § 501 *et seq.* (the "SCRA");  (ii) she did not

receive the notices required by Mass. Gen. Laws ch. 244, § 14 and § 35A; (iii) the foreclosure

sale violated the automatic stay provisions of the Bankruptcy Code; and (iv) she was fraudulently

induced by Fannie Mae to enter into an agreement for judgment in a summary process eviction

action it had commenced in the Massachusetts  housing court. The defendants have moved for

summary judgment on all eleven counts of Ms. Goulet's amended complaint. For the reasons set

forth below, I will grant summary judgment in favor of the defendants as to count I, to the extent

it seeks relief based on the assertion that GMAC failed to obtain a judgment under the SCRA

prior to the foreclosure, and counts II, and IV. I will dismiss VI. A ruling on the remaining

requests for summary judgment will be held in abeyance pending a determination of the

automatic stay issue.

## Facts

The facts necessary for determining this matter are drawn from the defendants' statement

of uncontested facts, those facts in the amended complaint which the defendants admit are true

and the documents attached to the affidavit of Laura D. Sannicandro, the now-former attorney

for the defendants, filed in support of the defendants' motion for summary judgment. I also take

judicial notice of the dockets and pleadings in Ms. Goulet's current and prior chapter 13

bankruptcy cases.[2]

Ms. Goulet purchased the Milford property on or about March 20, 2003, for $239,000.[3]

---

[2] A court may take judicial notice of its own docket. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999).

[3] Amended Complaint at ¶ 17.

On or about November 21, 2003, Ms. Goulet conveyed the property to herself and Stephen

Goulet, her then-husband.[4] On this same date Mr. Goulet executed a $213,000 note secured by a

mortgage on the property in favor of Mortgage Master, Inc.,[5] which immediately assigned the

mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for GMAC.[6]

Only Mr. Goulet signed the note although both he and Ms. Goulet executed the mortgage.[7] At

some point the Goulets divorced although the record is silent as to when and whether they each

retained an ownership interest in the property after the divorce.

On March 31, 2009, GMAC sent Mr. and Ms. Goulet letters informing them that their

mortgage was in default and that they had 90 days to cure the default.[8] They did not. On July 1,

2009, MERS assigned the mortgage to GMAC.[9] On March 22, 2011, GMAC sent the Goulets,

by first class mail and by certified mail, return receipt requested, notices of the acceleration of its

debt.[10] Although she does not identify a time frame, Ms. Goulet avers in her amended complaint

that she "knew she was behind on the mortgage, and attempted to make the missing payments to

Defendant GMAC, but her now ex-husband refused to cooperate, and GMAC was unable to talk

---

[4] *Id.* at ¶ 21. The defendants neither admitted nor denied the allegations in ¶ 21 but instead recite
that the "document speaks for itself." The deed conveying the Property from Ms. Goulet to Mr.
and Mrs. Goulet is not part of the record, however.

[5] Statement of undisputed facts at ¶ 2.

[6] *Id.* at ¶ 4.

[7] *Id.* at ¶ 1.

[8] *Id.* at ¶ 5.

[9] *Id.* at ¶ 6.

[10] *Id.* at ¶ 7.

to [her] or accept payments from her, as she was not authorized to speak on the account at that time,"[11] presumably because she was not a signatory on the note.

In April 2011, GMAC filed an action under the SCRA in the Massachusetts Land Court[12] and obtained a judgment on July 19, 2011.[13] On July 7, 14 and 21, 2011, notices of the foreclosure sale were published in a local newspaper[14] and on July 28, 2011, Nancy Freni, a licensed auctioneer, conducted a foreclosure sale by public auction at the property. GMAC was the high bidder at the auction.[15] Also on July 28, 2011, entry upon the property pursuant to Mass. Gen. Laws ch. 244, § 1 was made by Maritza Salladare, described as "an agent of Orlans Moran PLLC a duly authorized attorney-in-fact of GMAC Mortgage LLC." Edward C. Jardus and Jane R. Rosenblatt witnessed Ms. Salladare's entry and on July 28, 2011, they signed an affidavit to that effect.[16] The affidavit was notarized by Ms. Freni. Some five months later on January 19, 2012, GMAC executed a certificate of authorization certifying that it had appointed Orlans Moran as its agent to make entry upon the property. Orlans Moran appointed Ms. Salladare as its agent on February 2, 2012, almost six months after she made entry on to the property.

On January 19, 2012, GMAC executed both an assignment of bid, assigning its

---

[11] Amended complaint at ¶ 35. The defendants did not dispute these facts, instead responding only that "[n]o response [was] necessary [and that] GMAC was not privy to [Ms. Goulet's] thoughts." Amended answer at ¶ 35.

[12] Exhibit 1 to the Sannicandro Affidavit.

[13] Statement of undisputed facts at ¶ 5 and exhibit 1 to the Sannicandro affidavit.

[14] *Id.*

[15] Statement of undisputed facts at ¶ 9 and exhibit 1 to the Sannicandro affidavit.

[16] Statement of undisputed facts at ¶ 10 and exhibit 1 to the Sannicandro affidavit.

foreclosure sale bid to Fannie Mae, and a foreclosure deed, conveying the Milford property to

Fannie Mae.[17] On February 2, 2012, Caleb J. Shureb, an employee of Orlans Moran, signed an

affidavit of sale.[18] The affidavit of sale recites that newspaper notices of the foreclosure sale

were published in accordance with the state statute, that the notices to the mortgagors required by

Mass. Gen. Laws ch. 244, § 14 were sent, that GMAC sold the property to itself as the high

bidder and that "[s]aid bid was then assigned to Federal National Mortgage Association as

evidenced by Assignment of Bid recorded herewith as Exhibit B." On February 3, 2012, some

five months after the foreclosure sale, the foreclosure deed, the assignment of bid and the

affidavit of sale were recorded in the Worcester District Registry of Deeds.[19]

On September 16, 2011, after the foreclosure sale but before the foreclosure deed was

recorded, Ms. Goulet commenced her prior chapter 13 case (no. 11-43918). It was dismissed on

March 27, 2012, as a result of Ms. Goulet's failing to make her chapter 13 plan payments. While

her case was pending, however, neither GMAC nor Fannie Mae requested or received relief from

the automatic stay to continue with their post-foreclosure activities, including executing the

affidavit of sale or recording the affidavit of sale or the foreclosure deed.

On June 18, 2012, Fannie Mae commenced a summary process eviction action against

Ms. Goulet in the Worcester County Division of the Housing Court Department of the

---

[17] Exhibit 1 to the Sannicandro affidavit. According to the foreclosure deed, there was a loan modification agreement that was recorded on April 1, 2010. The loan modification is not part of the record before me.

[18] *Id.*

[19] *Id.*

Massachusetts Trial Court.[20] In her answer to the summary process complaint, Ms. Goulet

asserted that the foreclosure was invalid because she had not received the required statutory

notice, that GMAC had failed to obtain a judgment under the SCRA and that Ms. Salladare had

not been appointed to act as GMAC's agent until after she had made entry upon the property.

Ms. Goulet asserted a counterclaim for damages under Mass. Gen. Laws ch. 93A, alleging that

GMAC acted precipitously in foreclosing its mortgage without giving her time to obtain a loan

modification.[21] Subsequently, Ms. Goulet and Fannie Mae entered into an agreement for

judgment which provided that judgment for possession would enter in favor of Fannie Mae on

October 4, 2012, that in the interim Ms. Goulet would pay rent of $1,000.00 per month and that

she would vacate the property on November 30, 2012.[22] The agreement also stated that Ms.

Goulet was diligently to pursue the repurchase of the property from Fannie Mae during this

period. The agreement was approved by the housing court on October 4, 2012.[23] By amendment

to the agreement for judgment approved by the housing court on November 15, 2012, the date by

which Ms. Goulet was to have vacated the Milford property was extended to June 30, 2013. She

continues to reside at the property.[24]

On July 15, 2013, Ms. Goulet initiated her current chapter 13 case and on August 16,

2013, she filed her complaint against GMAC and Fannie Mae commencing this adversary

---

[20] Statement of uncontested facts at ¶ 13.

[21] Exhibit 2 to the Sannicandro affidavit.

[22] Exhibit 3 to the Sannicandro affidavit.

[23] *Id.*

[24] *Id.*

proceeding. In her amended complaint Ms. Goulet seeks a declaration that the foreclosure sale

was void because of (i) a "breach of the duty of good faith and reasonable diligence" by GMAC

for, among toher things, failing to obtain a judgment under the SCRA (count I), (ii) a "violation

of M.G.L. c. 244 § 14 by faulty notice" (count II), (iii) a "violation of M.G.L. c. 244 § 14 by

improper sale" (count III), (iv) a "violation of M.G.L. c. 244 § 35A" (count IV) and (v) a

"violation of M.G.L. C. 244 § 1" (count VI). She also asserts four counts (counts VIII through

XI) claiming that the foreclosure sale was void because it violated the automatic stay in effect

during her prior bankruptcy case. In count V she asserts a claim for fraud against Fannie Mae in

obtaining the housing court agreement for judgment. Finally, she seeks damages for GMAC's

conduct under several of the counts, including count VII in which she alleges that GMAC's

conduct violated the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A.[25]

The amended complaint, like the original one, is styled as a verified complaint but is not signed

by Ms. Goulet under the penalties of perjury. Nevertheless, at oral argument on the defendants'

motion for summary judgment all parties agreed that the amended complaint is to be treated as

verified.

---

[25] Ms. Goulet's eleven count amended complaint is hardly a model of clarity. Parsing the allegations is made more difficult as the titles of some counts bear little relation to the claims asserted in those counts. For example, count I, directed only at GMAC, is styled "breach of duty of good faith and reasonable diligence" and asserts that GMAC foreclosed without obtaining judgment under SCRA, that it refused to consider Ms. Goulet for loss mitigation and that it rebuffed her attempts to cure the default. In addition, she does not identify whether some of the counts are directed to only one of the defendants or both although it appears that counts I through IV and VI are against only GMAC, counts V, X and XI are against Fannie Mae while counts VII, VIII and IX may be aimed at both.

## Jurisdiction

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E). Venue is proper pursuant to 28 U.S.C. § 1409.

## Positions of the Parties

The defendants argue that the claims which Ms. Goulet asserts in counts I through IV, VI and VII of her amended complaint fail because the housing court's approval of the agreement for judgment constitutes a determination that the foreclosure was valid. Alternatively, they allege that these claims could have been raised by Ms. Goulet in the housing court action and thus are barred by the doctrine of *res judicata* from being raised here. Citing *Harker v. Holyoke*, 390 Mass. 555 (1983), and *Possehl v. Ossino*, 28 Mass. App. Ct. 918 (1989), the defendants assert that the doctrine of *res judicata* applies to the agreement for judgment entered into in the housing court without regard to whether the housing court had jurisdiction over the case in light of any possible automatic stay violation. In any event they insist there was no automatic stay violation because a memorandum of sale was executed on July 28, 2011,[26] thereby terminating Ms. Goulet's right of redemption and rendering the automatic stay that subsequently arose upon Ms. Goulet's first chapter 13 filing inapplicable to the Milford property. Consequently, they maintain that counts VIII through XI of the amended complaint fail as each is based on an alleged violation of the automatic stay. Count V alleging fraud in connection with the agreement for judgment is, in the defendants' view, barred by the agreement itself under the *Rooker-Feldman* doctrine and 28 U.S.C. § 1738. With respect to Ms. Goulet's demand for money damages, the

---

[26] This memorandum of sale is not part of the record in this adversary proceeding.

8

defendants assert that GMAC's own bankruptcy[27] prevents the assertion of such a claim against it. Finally, relying on *Wenzel v. Sand Canyon Corp.*, 841 F. Supp.2d 466, 482 (D. Mass. 2012), *abrogated on other grounds by Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282 (1st Cir. 2013), the defendants assert that not only is Fannie Mae not vicariously liable for any of GMAC's actions, but also that Ms. Goulet's signing of the housing court agreement for judgment constituted a waiver of any claims she may have had against Fannie Mae.

In her opposition, while Ms. Goulet claims that there are disputed issues of material fact which render summary judgment inappropriate, she argues only in a general way "that there were numerous unfair, illegal, and deceptive acts that took place during the origination and servicing of the loan and such acts are at the heart of this matter." She denies receiving notice required by Mass. Gen. Laws ch. 244, § 35A. She claims that even if the execution of a memorandum of sale terminated her right to redeem the Milford property, she had and continues to have a possessory interest in the property that made the deeding of the property to Fannie Mae during the pendency of her prior chapter 13 case a violation of the automatic stay. In addition, Ms. Goulet alleges that Fannie Mae and GMAC acted in concert to effectuate the foreclosure sale and in her view that alone is sufficient to render Fannie Mae liable. She goes further, however, to allege that Fannie Mae fraudulently induced her to enter into the housing court agreement for judgment by promising to consider her reasonable offers to repurchase the property while consistently refusing to honor that commitment.

---

[27] *In re Residential Capital, LLC et al.*, chapter 11 case no. 12-12020 (Bankr. S.D.N.Y.).

## Discussion

Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of a material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056. A "genuine" issue is one supported by such evidence that "a reasonable jury, drawing favorable inferences," could resolve in favor of the nonmoving party. *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 427 (1st Cir. 1996)). "Material" means that a disputed fact has "the potential to change the outcome of the suit" under the governing law if the dispute is resolved in favor of the nonmovant. *McCarthy v. Nw. Airlines, Inc.,* 56 F.3d 313, 314–15 (1st Cir. 1995).

The moving party bears the initial responsibility of informing the court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997). To that end, Rule 56.1 of the Local Rules for the District of Massachusetts, made applicable to

this adversary proceeding by MLBR 7056-1, requires a party moving for summary judgment to

include a "concise statement of material facts to which the moving party contends that there is no

genuine issue to be tried. . . ."

Both LR, D. Mass. 56.1 and Fed. R. Civ. P. 56 require that the factual allegations be

properly supported. Fed. R. Civ. P. 56(c) provides:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions,
>> documents, electronically stored information, affidavits or declarations,
>> stipulations (including those made for purposes of the motion only), admissions,
>> interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a
>> genuine dispute, or that an adverse party cannot produce admissible evidence to
>> support the fact.

LR, D. Mass. 56.1 provides:

> Motions for summary judgment shall include a concise statement of the material facts of
> record as to which the moving party contends there is no genuine issue to be tried, with
> page references to affidavits, depositions and other documentation. Failure to include
> such a statement constitutes grounds for denial of the motion. Opposition to motions for
> summary judgment must be filed, unless the court orders otherwise, within 21 days after
> the motion is served. A party opposing the motion shall include a concise statement of the
> material facts of record as to which it is contended that there exists a genuine issue to be
> tried, with page references to affidavits, depositions and other documentation. *Copies of
> all referenced documentation shall be filed as exhibits to the motion or opposition.*
> Material facts of record set forth in the statement required to be served by the moving
> party will be deemed for purposes of the motion to be admitted by opposing parties
> unless controverted by the statement required to be served by opposing parties. Unless
> the court orders otherwise, the moving party may file a reply within 14 days after the
> response is served. (Emphasis added).

As both the federal rule and the local rule recognize, statements of undisputed facts are to

include the supporting documentation. When such documentation is omitted or if a party fails to

address a material fact, Fed. R. Civ. P. 56(e) provides the court with several options. Fed. R. Civ.

P. 56(e) provides:

> *Failing to Properly Support or Address a Fact*. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Finally, it is worth a reminder that arguments of counsel, whether oral or written, are not

evidence. Fed. R. Bankr. P. 9017, Fed. R. Evid. 602 and 603. *See also Braunstein v. Sanders (In*

*re Muhammad)*, Adv. Pro. No. 10–1258, 2011 WL 2224410, at *3 (Bankr. D. Mass. June 7,

2011). Thus a statement of an undocumented and unsworn "fact" in a brief is not sufficient by

itself to support or rebut summary judgment.

### The Claims against GMAC and Fannie Mae

Ms. Goulet's claims for declaratory relief against GMAC and Fannie Mae generally fall

into three categories: allegations that the foreclosure was invalid because she never received the

notices which state law requires be sent prior to the mortgagee's accelerating its debt and prior to

foreclosure, allegations that the foreclosure was invalid because GMAC violated the automatic

stay and allegations that the housing court judgment is invalid because Ms. Goulet was induced

to enter into the agreement for judgment by Fannie Mae's false representations. Her claims for

monetary damages appear in several counts in the amended complaint in connection with

GMAC's conducting the foreclosure sale. Her claim for damages under Mass. Gen. Laws ch.

93A is predicated upon GMAC's refusal to talk to her while she and her husband were in the

"process of separating" and upon the defendants' actions in foreclosing without having given her proper notice.

### Count I: Failure to Obtain SCRA Judgment

At oral argument Ms. Goulet's attorney acknowledged that prior to the foreclosure, GMAC had obtained the required SCRA judgment from the Massachusetts Land Court.[28]  Thus her claim that GMAC foreclosed without having obtained judgment under the SCRA has been waived and therefore the defendants are entitled to summary judgment on count I to the extent that it is based on Ms. Goulet's erroneous assertion that GMAC failed to obtain a judgment under the SCRA prior to the foreclosure.

### Counts II and IV: Failure to Receive Notice

Ms. Goulet's claim that the foreclosure was invalid because she did not receive the notices required by Mass. Gen. Laws ch. 244, § 14 and § 35A is easily dispatched.[29] Neither

---

[28] In any event"[i]f a foreclosure were otherwise properly made, failure to comply with the 1940 Relief Act [the prior version of SCRA] would not render the foreclosure invalid as to anyone not entitled to the protection of that act." *Beaton v. Land Court*, 367 Mass. 385, 390, 326 N.E.2d 302, 305-06 (1975).

[29] Mass. Gen. Laws ch. 244, § 14 provides in relevant part:

> The mortgagee or person having estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, perform all acts authorized or required by the power of sale; provided, however, that no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less than 21 days before the day of sale, in a newspaper published in the city or town where the land lies or in a newspaper with general circulation in the city or town where the land lies and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale . . . .

13

statute requires that notice be received, only that it be sent.[30] *Bailey v. Wells Fargo (In re Bailey)*, 468 B.R. 464, 473 (Bankr. D. Mass. 2012) ("The law in Massachusetts is clear; the requirement that the [ch. 244, § 14] notice be mailed to the owner of the relevant property "is satisfied by mailing and *nonreceipt is irrelevant.*" *Hull v. Attleboro Sav. Bank,* 33 Mass. App. Ct. 18, 596 N.E.2d 358, 362 (1992) (emphasis supplied); *see also Lindsey v. First Horizon Home Loans,* Civil Action No. 11–10408–FDS, 2012 WL 689745, at *3 (D. Mass. Mar. 1, 2012)."); *Silveira v. Wells Fargo Bank, N.A. (In re Silveira)*, Adv. Pro. No. 12-4036, 2013 WL 1867472, at

---

Mass. Gen. Laws ch. 244, § 35A as it existed when the notice was sent to Ms. Goulet provided in relevant part:

> (a) Any mortgagor of residential real property located in the commonwealth consisting of a dwelling house with accommodations for 4 or less separate households and occupied in whole or in part by the mortgagor, shall have a 90 day right to cure a default of a required payment as provided in such residential mortgage or note secured by such residential real property by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage. The right to cure a default of a required payment shall be granted once during any 5 year period, regardless of the mortgage holder.

> (b) The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment in subsection (a) by any method authorized by this chapter or any other law until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor.

> Said notice shall be deemed to be delivered to the mortgagor when delivered to the mortgagor or when mailed to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder.

Effective August 10, 2010, the cure period under Mass. Gen. Laws ch. 244, § 35A was increased to 150 days.

[30] Massachusetts law generally treats certified and registered mail as interchangeable for most purposes. *Cadillac Auto. Co. of Boston v. Stout*, 20 Mass. App. Ct. 906, 906, 477 N.E.2d 1048, 1049 (1985) ("We cited there to a well-established line of cases treating the difference between certified and registered mail as immaterial for most purposes.").

14

*6 (Bankr. D. Mass. May 3, 2013). Even a defective notice does not render a foreclosure invalid.

*U.S. Nat'l Bank v. Schumacher*, 467 Mass. 421, 430-31, 5 N.Ed.3d 882, 889 (2014) (a defective

notice of the right to cure does not affect the validity of the foreclosure sale). Thus, the

defendants are entitled to summary judgment on counts II and IV.

<u>Count VI: Failure to Comply with Mass. Gen. Laws ch. 244, § 1(a)</u>

Mass. Gen. Laws ch. 244, § 1 contemplates mortgage foreclosure by alternate methods,

one of which is entry. Mass. Gen. Laws ch. 244, § 1(a) provides:

> a mortgagee may, after breach of condition of a mortgage of land, recover possession
> of the land mortgaged by an open and peaceable entry thereon . . . ; and possession so
> obtained, if continued peaceably for three years from the date of recording of the
> memorandum or certificate as provided in section two, shall forever foreclose the
> right of redemption.

Although a bit fuzzy Ms. Goulet appears to be arguing in count VI that the foreclosure by entry

is void because Ms. Salladare had not been appointed as GMAC's agent until after she made

entry and, therefore, legal tile to the Milford property "should be transferred to her." The premise

of Ms. Goulet's count is incorrect because as a matter of law there has been no completed

foreclosure by entry and so no passage of title as a result of such entry. The statute requires that

after entry, peaceable possession continue for three years in order to foreclose a mortgagor's

right of redemption. Ms. Goulet commenced this adversary proceeding prior to the expiration of

the three year period and that was sufficient to terminate the defendants' peaceable possession.

*Silveria*, 2013 WL 1867472, at *9-10. Even assuming that entry had been effective, there has

been *commissorius interruptus* by virtue of this adversary proceeding. Therefore, count VI does

not state a valid claim and the count will be dismissed.

<u>Counts VIII through XI: Violation of the Automatic Stay</u>

The automatic stay provisions of Bankruptcy Code § 362 include subsection (a)(1) which enjoins, among other things, "the commencement, or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor . . ." and subsection (a)(3) which prohibits "any act to obtain possession of property of the estate from the estate or to exercise control over property of the estate . . . ." "The automatic stay is among the most basic of debtor protections under bankruptcy law. It is intended to give the debtor breathing room by stopping all collection efforts, all harassment, and all foreclosure actions." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997) (internal citations and quotation marks omitted).  It "also ensures that the assets of a debtor are not reduced or disturbed and protects the bankruptcy court's exclusive jurisdiction over the debtor and its property." *In re Mohawk Greenfield Motel Corp.*, 239 B.R. 1, 5 (Bankr. D. Mass. 1999). The stay is "automatic" as it arises upon the commencement of a bankruptcy case without the need for any judicial action. *Soares*, 107 F.3d at 975. The automatic stay remains in force with respect to an act against property of the estate "until such property is no longer property of the bankruptcy estate. "11 U.S.C. § 362(c)(1); *Rodriquez Camacho v. Doral Fin. Corp. (In re Rodriguez Camacho)*, 361 B.R. 294, 299 (B.A.P. 1st Cir. 2007). The stay of any other act continues until the earliest to occur of the case being closed, the case being dismissed or the debtor's discharge being granted or denied. *Id. See also* 11 U.S.C. § 362(c)(2)(A), (B), or (C).

Under binding First Circuit precedent, actions taken in violation of the automatic stay are void, *Soares*, 107 F.3d at 976, as are default judgments entered in an action the commencement or prosecution of which violated the automatic stay. *In re Weber*, 283 B.R. 630, 635 (Bankr. D.

16

Mass. 2002). Although only the bankruptcy court in which a bankruptcy case is pending may

terminate the automatic stay in that case, state courts in which litigation is pending have

jurisdiction to determine whether the automatic stay applies. *Martinez v. Buckley (In re*

*Martinez),* 227 B.R. 442, 444-45 (Bankr. D.N.H. 1998). "A Congressional grant of exclusive

jurisdiction to the federal courts includes the implied power to protect that grant." *Gonzales v.*

*Parks*, 830 F.2d 1033, 1036 (9th Cir. 1987). As a result, if a state court concludes there is no stay

but the bankruptcy court disagrees, the bankruptcy court's conclusion controls as it renders any

action by the state court taken in violation of the automatic stay void *ab initio*. *Chao v. Hospital*

*Staffing Servs., Inc.*, 270 F.3d 374, 383 (6th Cir. 2001); *Raymark Ind., Inc. v. Lai*, 973 F.2d 1125,

1132 (3d Cir. 1992).

Determining whether GMAC's execution and recording of the affidavit of sale and

foreclosure deed violated the automatic stay in effect during Ms. Goulet's prior bankruptcy case

turns on whether a memorandum of sale was executed and if so, when. Under Massachusetts law

a mortgagor retains the equity of redemption, that is, the power to redeem the mortgaged

property, until the land is sold pursuant to the power of sale contained in the mortgage ***and*** a

memorandum of sale is properly executed. Mass. Gen. Laws ch. 244, § 1. It is the execution of a

memorandum of sale by the mortgagee or its auctioneer and the purchaser that completes the

foreclosure process and terminates a mortgagor's equity of redemption. *Outpost Café, Inc. v.*

*Fairhaven Sav. Bank*, 3 Mass. App Ct. 1, 7, 332 N.Ed2d 183, 187 (1975) ("we hold that the

plaintiff's equity of redemption was barred under the controlling clause of G.L. c. 244, § 18, at

least as early as the point in time when the memorandum of sale was executed with the purchaser

at the foreclosure sale."). *See also In re Grassie,* 293 B.R. 829, 831 (Bankr. D. Mass. 2003)

17

("The execution of the memorandum of sale terminates a debtor's equity of redemption."); *In re Dow*, 250 B.R. 6, 8 (Bankr. D. Mass. 2000) ("[U]nder Massachusetts law redemption rights still exist until execution of a memorandum of sale following the bidding process."). Until then, the sale does not satisfy the Statute of Frauds and thus is unenforceable. *Outpost Café*, 3 Mass. App. Ct. at 7. Assuming that a property is sold at a foreclosure sale conducted in accordance with state law, the execution of a memorandum of sale prior to a mortgagor's commencing a bankruptcy case means that the foreclosed real estate never becomes property of the bankruptcy estate and so the automatic stay which takes effect upon the bankruptcy filing does not apply to acts with respect to the foreclosed property. *In re Mellino*, 333 B.R. 578, 586 (Bankr. D. Mass. 2005).

Ms. Goulet's argument that the automatic stay protects her possessory interest in the property as an occupant post-foreclosure is correct but irrelevant. At the time Fannie Mae commenced the summary process action in the housing court there was no bankruptcy case, hence no automatic stay in place.

The defendants invoke the doctrine of *res judicata* to argue that any acts or omissions that might ordinarily have affected the validity of the foreclosure sale of the Milford property, including a violation of the automatic stay, cannot now be the basis for invalidating the foreclosure sale. They maintain that because a summary process eviction plaintiff's holding valid title to the property that is the subject of the eviction proceeding is an essential element, indeed a condition precedent, to that action,[31] by approving the agreement for judgment the housing court

---

[31] "In a summary process action for possession after foreclosure by sale, the plaintiff is required to make a prima facie showing that it obtained a deed to the property at issue and that the deed and an affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded. See *Lewis v. Jackson,* 165 Mass. 481, 486–487, 43 N.E. 206 (1896); G.L. c. 244, § 15." *Bank of New York v. Bailey*, 460 Mass. 327, 334-335, 951 N.E.2d 331, 336 -37 (Mass.

has made a presumptive determination that the foreclosure, by which the defendants acquired

title, was valid. That determination, argues the defendants, is binding on Ms. Goulet even if the

housing court's approval of the agreement for judgment turns out to be void as violative of the

automatic stay.

The defendants offer two Massachusetts cases to support their argument, *Harker v. City

of Holyoke*, *supra*, and *Possehl v. Ossino*, *supra*. Putting aside the defendants' argument that the

agreement for judgment should be given effect without regard to any violation of the automatic

stay, I find the cases cited by the defendants do not advance their cause. In *Harker* the Supreme

Judicial Court ruled that a state superior court plaintiff tenant's claims against his landlord for

failure to provide adequate water pressure were barred under principles of *res judicata* due to the

tenant's having litigated through trial the same claims in the state housing court and lost, even

though the housing court judgment was void for lack of subject matter jurisdiction. The SJC's

reasoning depended heavily on the fact that in the housing court the tenant "had a full and fair

trial, lost on the merits and chose not to appeal." *Harker*, 390 Mass. at 559. In those

circumstances the SJC deemed it appropriate not to "give precedence to the principle of validity

of judgments over the principle of finality." *Id. Harker* is thus distinguishable from the case here

which did not involve a trial on the merits in the housing court.

In *Possehl*, a two page rescript opinion, the Massachusetts Appeals Court extended the

holding in *Harker* to an agreement for judgment entered by the housing court without subject

matter jurisdiction over the dispute. The Appeals Court did not explain how it made the leap

---

2011). As the record reflects, apart from any overarching issue involving a stay violation, as a
matter of state law and procedure, Fannie Mae had successfully made this *prima facie* showing
in the housing court.

19

from enforcing principles of *res judicata* after a full and fair trial on the merits to enforcing those principles in the context of an abbreviated proceeding resulting in a non-litigated agreement for judgment. Thus its ruling is unpersuasive and I am not prepared to follow it, especially in this case where Ms. Goulet claims the agreement for judgment was procured through fraud.

If the housing court approval of the agreement for judgment is void because it violated the automatic stay, I do not believe Ms. Goulet would by barred by principles of *res judicata* from raising the validity of the foreclosure either in this adversary proceeding or in the housing court in the context of a request to vacate the agreement for judgment based on her allegations of fraud in the inducement. *See Foresta v. Previte*, 13 MISC 476508(RBF), 2014 WL 5323066, at *4 (Mass. Land Ct. Oct. 20, 2014) (finding that superior court judgment which entered in violation of the automatic stay was void and thus title to property was not transferred pursuant to the judgment). Thus it is critical at this point to determine whether the automatic stay was violated in the housing court.

While Ms. Goulet has not challenged the defendants' unsworn and undocumented assertion that a memorandum of sale was executed at the foreclosure sale on July 19, 2011, the absence of a memorandum of sale from the record prevents me from making a finding that the recording of the affidavit of sale and the foreclosure deed did not violate the automatic stay in effect as a result of Ms. Goulet's prior bankruptcy case. It thus prevents further action on the defendants' motion for summary judgment and more broadly on the ultimate disposition of this adversary proceeding. In the event a memorandum of sale was executed prior to Ms. Goulet's first bankruptcy case so that no stay violation occurred, my intention is to abstain from hearing the remaining counts of the amended complaint so that the parties may return to the housing

20

court which would be the more appropriate forum to determine Ms. Goulet's claims regarding the defendants' conduct, especially with regard to the agreement for judgment which was filed in and approved by the housing court. If, on the other hand, a stay violation has occurred so that all foreclosure activities after the filing of Ms. Goulet's first bankruptcy petition were invalid and the housing court agreement for judgment is void, I will take up the remaining counts for which summary judgment has been requested.

### Conclusion

For the foregoing reasons, I will grant summary judgment in favor of the defendants as to count I, to the extent it seeks relief based on the assertion that GMAC failed to obtain a judgment under the SCRA prior to the foreclosure, and counts II and IV of the amended complaint. I will dismiss count VI. I will suspend further consideration of the defendants' motion for summary judgment as to the remaining counts of the amended complaint pending a determination as to the existence of a stay violation.

REMAINDER OF PAGE LEFT BLANK

I will also order that the defendants file an affidavit or affidavits describing the circumstances surrounding the execution of the memorandum of sale, including the place and time of its execution, along with a copy of the memorandum of sale. Ms. Goulet will be given an opportunity to respond and, if appropriate, to request an evidentiary hearing on this issue.

Separate orders will issue.

At Worcester, Massachusetts this 21st day of January, 2015.

By the Court,

_____
Melvin S. Hoffman
Chief U.S. Bankruptcy Judge

Counsel Appearing:    Daniel Hyman, Esq.
Perez-Kudzma Law Firm
Weston, MA
for the plaintiff, Jaqueline Goulet


Timothy Lawson, Esq.
Orlans Moran PLLC
Waltham, MA
for the defendants, GMAC Mortgage, LLC and the Federal
National Mortgage Association